## NEWTON vs. JACKSON.

1. When the consideration of a note is not expressed in the instrument itself, parol proof is admissible to show what it was, and that the contract of which the note formed a part had been rescinded by the parties.
2. A general objection to an answer containing competent as well as incompetent evidence, may be overruled.
3. When evidence is adduced to contradict the statement of a witness on an immaterial point, the party who called him may introduce witnesses to sustain his general character, although the opposite party disclaims any intention of discrediting him.
4. A motion to exclude testimony should be clear and specific; if it is so general and indefinite that the mind is at a loss readily to understand the ground which it is intended to cover, the motion should be overruled.
5. A charge which assumes a question of fact to be a question of law, is erroneous.

ERROR to the Circuit Court of Montgomery.

Tried before the Hon. GEORGE GOLDTHWAITE.

ASSUMPSIT by John H. Newton against Henry M. Jackson, on a note for $347 25, dated December 6, 1843, and payable on the 1st January, 1845, with interest from January 1, 1844.

The defendant pleaded, among other things, that the note was given under an agreement in writing in these words:

" This is to certify, that I have this day agreed with Doctor Henry M. Jackson, and hereby bind myself to do and perform the agreement hereinafter expressed, to-wit:. whereas I own a certain negro woman, named Eliza, and her child, a boy named William, which negroes are now hired to said Jackson, and the said Henry M. proposes purchasing them from me, I do bind myself to let said Henry M. Jackson have said negroes above named, at the price paid by me at sheriff's sale, viz., $500 25, at any time previous to January 1, 1845, on his paying me the said sum of $500 25, and the further sum of $347 25, in a note of said Henry M. now held by me, and two other notes of said Henry M. Jackson, payable to me for hire of said negroes, one for $53, and due at ten months after date, and dated February 11, 1843, and the other due January 1, 1845, for the sum of $50. Now, whenever said Henry M. shall pay the above named

notes, at any time previous to January 1, 1845, I bind myself to sell said negroes to him on the terms above named, and I further bind myself not to sell or dispose of them to any other person during that period. December 6, 1843."

  (Signed)         JOHN H. NEWTON.

The plea further alleges, that the note sued on is one of the notes described in this agreement, and was given in consideration of said agreement and the purchase of said slaves ; that afterwards, to-wit : on November 30, 1844, said contract was rescinded by the parties, so far as regarded the purchase of the slaves, and the slaves were delivered up to the plaintiff, and were by him accepted in satisfaction of said note.

The deposition of one James Jackson, the father of the defendant, was taken on behalf of the defendant, and was read at the trial. The plaintiff moved to exclude the entire deposition, but the motion was overruled.

The witness testified, in substance, that he knew the consideration of the note sued on from conversations with the plaintiff and his son ; that it was given for debts previously due and owing from witness to plaintiff, from which he had been discharged in 1843 under the bankrupt law ; that witness was urged by plaintiff, in the summer of 1849 or the spring of 1850, to become a co-signer of said note, on the ground that it was given for his debts, but he refused ; that he paid plaintiff, for his son, after their maturity, the two $50 notes mentioned in the contract as having been given for hire, and that he delivered up the negroes to plaintiff, when informed that the contract for their purchase had been rescinded.

The fifth direct interrogatory called on the witness to state anything else he might know, which would benefit the defendant. The answer to it is in these words : " In addition to answers to a former series of interrogatories, I would state that *the consideration for the said note was well known to me.* The July before (1843) a certificate of bankruptcy had been decreed to me in the United States Bankrupt Court for Georgia, *and defendant agreed to give said notes, under conditions prescribed in the contract between plaintiff and himself*, to cover debts to plaintiff enumerated in my bankrupt schedule, drawn up and returned to court in the previous January. The conditions on his side were, the assumption of said bankrupt debts to John H.

Newton v. Jackson.

Newton; and on plaintiff's side, the relinquishment to defendant of a colored woman and child, named Eliza and William, on defendant's paying the said note and the sum of nearly $500, the price at which the said servants were bought in at sheriff's sale by said plaintiff; and until the said servants were paid for at the stipulated amounts, the said Eliza was to be given up to defendant at the annual hire of $50. The defendant gave two notes for the hire for 1843 and 1844, *both which notes, at his request, and for him, I paid at maturity;* and after the annulling of said contract—an act done, as I understood from defendant, at plaintiff's own proposing—I returned the said servants to said John H. Newton. I always understood, being informed of it at the time or shortly after, that the note and agreement or contract, on which the said note was based, were to be destroyed; and I remained under the conviction that this had been done, until informed of the intention of the suit. I have no belief, and no reason whatever to believe, that plaintiff had any claim on defendant other than what arose from this conditional assumption of my bankrupt debts; for defendant resided in Carnesville, thirty eight or forty miles from Athens, and all pecuniary affairs of his in Athens passed through my hands, and were attended to by me."

The plaintiff objected to those parts of this answer which are italicized; but his objection was overruled, and he excepted.

The fifth cross interrogatory is as follows: "Did you ever hear Henry M. Jackson say anything about making the note on which this action is founded, just before it was made, or just afterwards? If you heard him say anything at the time specified, state what he said, and what you said in reply. Did you caution or advise him in the matter?"

The answer to it is as follows: "On the morning referred to in the answer to second direct interrogatories, as the defendant and myself were walking up into the town, but before we reached plaintiff's store, the defendant stated to me, for the first time, the proposed agreement with plaintiff, then nearly completed; that he, defendant, was to assume the claims on me barred by the statute of bankruptcy, and in return plaintiff was to sell him Eliza and her child, then about two years old, at the price they were bought in at sheriff's sale, say $500, and the amount of note then to be given by defendant, on assuming the debts

40

thus barred ; and that, until defendant was able to do this, hire was to be paid to plaintiff, and the servants to remain in defendant's possession. This conversation was held prior to said note being made. I remonstrated with him on it, and advised not to do it, as he might thus involve himself in pecuniary difficulties, the pressure of which he as yet knew not. He replied, that he should not be involved, and that he wished the servants for his mother's accommodation, as Eliza had been a favorite servant. I did also, at the close of the conversation, caution the defendant, and exhort him earnestly, to be on his guard in all his proceedings with said plaintiff, as a transaction, occurring in January, 1843, had fully taught me that in pecuniary matters he, plaintiff, was not to be confided in, and I knew that defendant was unguarded and unsuspicious."

The plaintiff objected to the whole of this answer ; but his objection was overruled, and he excepted.

The third rebutting interrogatory is as follows : " In answer to the fifth cross interrogatory, state all that defendant said as to that note, particularly what he said as to the consideration for which it was given, or was to be given, if you say that he did converse with you about it ; and as to the whole contract, if there was any, which gave rise to the giving of the note."

The answer is as follows : " The defendant, both in first conversation with me on our way to store of plaintiff, before the note was made, stated the conditions on which it was, if ever made, to be made, and in subsequent conversations those on which it had been made. Whether the proposition originated with plaintiff or defendant, I do not recollect ; but to my caution he replied, that there was no risk of involvement run by him, as the written contract would show why the note was given, if made, and the conditions stipulated to be done by plaintiff. These conditions were, that, for and in consideration of the defendant assuming and giving his note for the amount of claims (and interest thereon,) of plaintiff against me, but barred by the statute of bankruptcy, a certificate under which statute had been decreed to me in the July of 1843, the plaintiff bound himself to sell unto the defendant the servants Eliza and her child, for the same price at which he had purchased them at the sale by the sheriff in the early part of the year ; that, until defendant could do this, he was to have the servants in

possession, by paying hire for them annually, at the rate of $50 *per annum.*"

The plaintiff objected to the whole of this answer; but his objection was overruled, and he excepted.

The fourth rebutting interrogatory is as follows : " If, in answer to third rebutting interrogatory, you speak of a contract betwee plaintiff and defendant, as told to you by defendant in the conversation asked for in the fifth cross interrogatory, then state all you know of the fulfillment, completion and execution, or of the abandonment and rescission of that contract, as the case may be. In answering this question, state nothing but what you know, and what you derived from the plaintiff's conversation as asked about in the fifth cross interrogatory."

The answer to it is as follows : " A contract was made between the parties, the conditions of which were spoken about in the conversation between plaintiff and defendant in the store of the former, when I was partly present. They were the same that constituted the basis of the contract subsequently made. In fulfillment of that contract the defendant gave the said note, and the plaintiff hired the servant Eliza to defendant, at the stipulated price of $50 a year, a note of which, as well as one for the year 1843 at the same price, was given; both which notes I paid at his request, at maturity. The defendant was then a physician, practicing in Carnesville, Georgia, and his practice warranted the expectation of ability to discharge the note and purchase money, as stipulated in the contract. The year proved a healthy one, and payment he could not make at the close of the year. On stating this to plaintiff, I understood and was informed by defendant, that plaintiff proposed the rescinding of the whole, which, on my advice, was accepted by defendant, and the writing and consequently note were all to be destroyed, and the whole to be abandoned as if never agreed on. I left Georgia a few days afterwards, on a trip to Alabama, directing Eliza and her child to be returned to plaintiff, which was done about Christmas, 1844. On meeting defendant in January or February, 1845, after my return to Georgia, he informed me of the abandonment of the whole, and of the destruction of the papers, as he then supposed. I am under the impression, but not certain, that defendant told me of his throw-

ng his copy of the contract into the fire in the presence of plaintiff."

The plaintiff objected to the whole of this answer; but his objection was overruled, and he excepted.

In one of his answers the witness stated, that, in the spring of 1850 or summer previously, he saw the note now in suit in plaintiff's possession. In answer to this, the plaintiff introduced his attorney as a witness, who testified that said note was in his possession at the time referred to. Thereupon defendant called several witnesses to sustain the character of his said witness for truth and veracity; to which evidence the plaintiff objected, stating that he did not attempt to impeach the character of said witness, Jackson, for truth and veracity, but did not withdraw, nor offer to withdraw, his evidence. The objection was overruled, and plaintiff excepted.

The defendant then introduced the written contract referred to by the witness Jackson, the plaintiff having produced the same on notice to him, and it was read to the jury; "and the plaintiff then moved the court to reject the testimony of the witness Jackson in the note and agreement; which motion being overruled by the court, the *defendant* excepted."

The plaintiff moved to exclude the deposition of said Jackson, on the ground that he had heard only a part of the conversation of the parties, and because the stipulations were afterwards reduced to writing; but the court overruled the motion, and plaintiff excepted.

"The plaintiff asked the court to charge the jury, that the note was independent of the agreement, and that the agreement was not the consideration for the note;" which charge the court refused, and the plaintiff excepted.

All the rulings of the court above set forth, to which exception was taken, are now assigned for error.

W. B. Moss, for plaintiff in error:

1. When it appears that the stipulations sought to be proved were reduced to writing by the parties, the writing is the best, and *prima facie* the only evidence admissible.—1 Green. Ev. § 87; 10 Ala. 163, 554; 1 M. & M. 258; Paysant v. Ware *et al.*, 1 Ala. 162.

2. The court may look to any part of a deposition, to deter-

mine the competency of another part or of the whole.—Hatchett v. Gibson, 13 Ala. 597.

3. Bankruptcy cannot be proved by parol.—3 Camp. 236.

4. To make a party's declarations admissible on the ground that they were called for by the adverse party, they must be responsive to the interrogatory; and this rule will not be held to substitute secondary evidence, as hearsay, and parol testimony of the contents of a record or written instrument.—9 C. & P. 313; 1 *ib.* 558; 3 B. & Ald. 588; 3 Camp. 236; 2 Bos. & Pul. 548; 1 Green. Ev. § 203.

5. Evidence to support the character of a witnes is inadmissible, unless his character has been impeached: mere contradiction among witnesses will not authorize it. Bishop of Durham v. Beaumont, 1 Camp. 207, which has been followed by all the writers on evidence, and sanctioned by all the authorities.—1 Green. 469; 2 Russ. on Crimes 940; 1 Stark. Ev. 186; 9 Watts 124; 5 Cowen 314; 8 Pick. 154; 19 Wend. 579.

6. After the writing had been adduced, the depositions of the witness about the contemporaneous and previous stipulations of the parties were clearly inadmissible, and should have been excluded.—Cuthbert & Stanley v. Bowie, 10 Ala. 163, is conclusive on this point. See also West & West v. Kelly's Exrs., 19 Ala. 353; Hair *et al.* v. La Brouse, 10 Ala. 554; Paysant v. Ware & Barringer, 1 Ala. 164; McNair v. Cooper, 4 Ala. 660.

7. It is the province of the court, and its duty, to expound all written instruments of evidence, and to state their legal effect.—Earbee v. Craig, 1 Ala. 607; Bank v. Boykin, 9 *ib.* 322.

8. The agreement was an undertaking on the part of plaintiff, in consideration that the defendant would pay the note before it fell due, ("previous to January 1, 1845,") to sell him certain negroes at a certain price. It speaks of the note as "one now held by" plaintiff. The parol evidence offered went to vary and contradict the written agreement, which the court should have excluded, and charged the jury upon the legal effect of the agreement as requested.—See cases above cited.

ELMORE & YANCEY, *contra :*

1. The motion to exclude the whole of Jackson's deposition,

for the reasons set forth in the motion, was properly overruled, there being legal testimony in it.—Smith v. Zaner, 4 Ala. 99 ; Hrabrouski v. Herbert, 4 Ala. 265 ; Melton v. Troutman, 15 Ala. 535.

2. The motion to exclude the words excepted to in the answer to the fifth direct interrogatory, was properly overruled, because : 1st. The consideration of the note sued on was relevant under the pleadings. 2nd. Such consideration can be proved by parol testimony.—Cuthbert & Stanley v. Bowie, 10 Ala. 163. 3rd. A part of the words excepted to only tended to prove the consideration of said note. 4th. The other words excepted to only tend to prove compliance with the contract by defendant, which had not been annulled. 5th. Even if the last clause of the words excepted to was irrelevant, still the motion to exclude was properly overruled, for, the other parts being legal, the court was not bound to separate the good from the bad.—Smith v. Zaner, 4 Ala. 99.

3. The motion to exclude the entire answer to the fifth cross interrogatory was properly overruled, because the answer was responsive to plaintiff's own interrogatory, because it proves the consideration of the note sued on, and because a general objection to an answer of which a part is relevant should be overruled.—Borland v. Walker, 7 Ala. 269 ; Donnell v. Jones, 13 Ala. 490 ; Milton v. Rowland, 11 Ala. 732.

4. The motion to exclude the entire answer to the third rebutting interrogatory, was properly overruled, because it was responsive to the question, because it proved the consideration of the note, and because it contained some evidence which was legal.—Cases cited above.

5. The motion to exclude the entire answer to the fourth rebutting interrogatory was properly overruled for the same reason.

6. The testimony of plaintiff's attorney was not merely contradictory testimony as to the subject matter of the suit, as was the case in the Bishop of Durham v. Beaumont, 1 Camp. 207, but it was introduced purely to contradict Jackson; it could not be considered by the jury as substantive testimony, nor as proving the time when the attorney held the note, as a fact to sustain plaintiff's cause. It could only tend to discredit Jackson, and was only relevant to that issue ; and this being the case, defendant had the right to sustain his witness.

7. The motion to exclude the testimony of Jackson in reference to the note and agreement, was properly overruled, because it was " too general, vague and indefnite, imposing on the court the burthen which belonged to the objecting counsel."— Donnell v. Jones, 13 Ala. 506.

8. The charge asked was erroneous. The note and the agreement were both executed on the same day, and refer to each other ; and the proof showed that the note was the one referred to in the agreement.—Rives v. Toulmin, 19 Ala. 298. The charge took from the jury a matter which it was their province to decide, towit : what was the consideration of the note sued on.

PHELAN, J.—It was entirely competent for the defendant, Jackson, to show the consideration of the note on which he was sued. This he does by the testimony of his father, James Jackson, who, both in the direct and cross examination, states the substance of the agreement between plaintiff and defendant for the purchase of the slaves, Eliza and her child William, the knowledge of which he derived from declarations of the plaintiff, and declarations of the defendant called for by the plaintiff on cross examination. A part of this agreement he shows was, that, in consideration that plaintiff agreed to sell Eliza and her child, at the price he paid for them at sheriff's sale, to the defendant, he, the defendant, agreed to give his note for $347 25, (the note sued on,) for debts previously due from the father of defendant to the plaintiff, and which had been discharged under the bankrupt law. The written agreement was silent as to the consideration of that note, and therefore it could be proved by parol, without in any manner conflicting with the rule in regard to contradicting written instruments. The testimony of this witness also went to show, that the slaves had been returned to the possession of the plaintiff, a fact conducing to prove that the agreement between plaintiff and defendant, of which the note in suit formed a part, had been rescinded by the parties.

The motion to exclude the entire deposition, upon the ground that it went to contradict or vary the written agreement, was properly refused. The parol testimony, in fact, agreed with the written instrument, as far as that went, and the proof in

relation to the consideration of the note, and the rescission of the agreement, could not be affected by that objection, at all events.

The special exceptions taken to the parts of the answer to the fifth direct interrogatory, particularly designated in the statement of the case, have not been urged by plaintiff in error upon our attention, and from such examination as we have given them, we do not consider them well taken.

The body of the answer to the fifth cross interrogatory, is directly responsive to the question put by plaintiff himself, calling for the declarations of the defendant; and although it contains also matter that is not responsive, and which for that reason is not competent, the objection to the answer was general, and, therefore, properly overruled. The rule upon this subject is familiar.—Borland v. Walker, 7 Ala. 269 ; Murrah v. Branch Bank at Decatur, 20 Ala. 392.

The objection to the answer to the third rebutting interrogatory, was properly overruled. The answer was responsive, and the proof competent.

The objection to the answer to the fourth rebutting interrogatory, was general, and, therefore, properly overruled, although it contained some hearsay evidence not competent, the body of the answer being competent.

The witness, James Jackson, was asked to look at the note on which this suit was brought, and to say whether he had ever seen it before. He answered that he never saw it but once, and that was in the summer of 1849, or spring of 1850, at which time it was in the possession of the plaintiff. He then gave his testimony in relation to the contract and agreement of the parties respecting this note, as before stated. The plaintiff afterwards called a witness, (his attorney,) who testified, that the note was in his possession at the time when James Jackson swore it was in the possession of the plaintiff. Thereupon the defendant called witnesses to sustain Jackson's general character for truth and veracity. To this plaintiff objected, and said that he did not aim to impeach the credibility of the witness Jackson, but would not consent to withdraw the testimony he had offered in regard to the possession of the note. Upon his refusal to withdraw the testimony, the court permitted the de-

fendant to call witnesses to sustain the general character of the witness, James Jackson, and plaintiff excepted.

If the testimony adduced by plaintiff to contradict what Jackson had said about the possession of the note, was not intended to impeach his credibility, it was wholly irrelevant.— Where the note was, in whose possession in 1849 or 1850, was, of itself, wholly immaterial to the issue. The question in relation to its possession only became material as a means of testing either the accuracy of the recollection of Jackson, or his truthfulness; for, when asked if he had seen it before, he answered that he had, and gave time and place. The act then of the plaintiff in calling a witness to contradict Jackson in this matter, could have no other legitimate object than to impeach his testimony. This object the plaintiff disclaimed, but refused to withdraw his testimony, The right of the defendant to call witnesses to sustain the general character of Jackson, under these circumstances, was clear.

The motion of the plaintiff, "to reject all the testimony of the witness Jackson in reference to the note and agreement," was too general and indefinite to be noticed. It is the business of the parties and their counsel to make their points clear and specific. The responsibility and labor of those who have to decide is great enough, when the propositions laid before them connected with the case are precise and plain, Hence, when the mind is at a loss readily to understand the ground which an objection or motion is intended to cover, a court may and ought to refuse to grant it for that reason.—Donnell v. Jones, 13 Ala. 506.

The charge asked by the plaintiff was properly refused.— Whether "the note was independent of the agreement," or whether the agreement was or was not the "consideration of the note," were both *questions of fact*, which it was the right and duty of the jury to settle according to the proof. The charge as asked made the court assume the right of deciding these questions of fact, and was, therefore, properly refused.

From what has been said it will appear, that we find no error in the record, and the judgment below is affirmed.