THE STATE v. JOHN CHERRY and SALLY CHERRY.

It is within the discretion of the Judge presiding at a trial to admit or exclude evidence which, at the stage of the case when it is tendered, is irrelevant, even although the counsel tendering it promises to connect it with the case by subsequent testimony; *therefore*, no appeal to this Court lies from a ruling which excludes such evidence.

Where an imputation against the character of a witness is made by the very question which is put to him, evidence in support of that character becomes competent.

A witness called merely to sustain or impeach the character of another witness in the cause, may himself be either impeached or sustained.

A building of hewn logs (twenty-six feet by fifteen,) divided by a partition of the same, upon one side of which were horses, and upon the other, corn, oats and wheat, (threshed and unthreshed,) also hay, fodder, &c., having sheds adjoining, under which were wagons and other farming utensils, is a "barn" within the meaning of that word in the Rev. Code, c. 34, s. 2, punishing with death the burning of barns having grain in them.

(*State* v. *Laughlin*, 8 Jon. 455, *S.* v. *Garrell*, Bus. 359, cited and approved.)

ARSON, tried before *Logan*, *J.*, at Spring Term 1869 of the Superior Court of GASTON.

Upon the trial it was shown that the building charged to have been burned, was of hewn logs closely fitted together, twenty-six feet by fifteen in size; that a partition of hewn logs ran through it, cutting off eight or nine feet from the length, for stables, in which were kept his horses; that the other part (having an upper and a lower room,) usually held fodder, hay, and (in the room below) oats, rye, and wheat, in the straw and threshed; also, sometimes corn; that there were sheds adjoining on three sides, in which were kept the owner's buggy, wagon, threshing machine, wheat-fan, ploughs, farming tools,

32

&c.; and that when burned the building contained two horses, sixty bushels of threshed oats, ten bushels of corn, and a few bushels of rye.

Upon the trial the State introduced one Louisa Costner, and upon cross-examination for the prisoner, she was asked if "she did not have a bedstead in her house?" The question having been objected to as irrelevant, the Court asked what was its object. The counsel declined to answer in the presence of the witness, as it would enable her to evade it, but added that they expected to connect it with the case. Thereupon the Court excluded the question, and the prisoner excepted.

The prisoner introduced one James Davis as a witness to character only, who testified that the character of certain State witnesses was bad for virtue and truth. He was afterwards asked by the State if the character of those witnesses was not as good as his own, both for virtue and truth. The prisoner's counsel told the witness that he need not answer that question. The Solicitor did not insist upon an answer, and none was made.

The prisoner then introduced a witness, and proposed to prove the character of James Davis; the State objected, and the objection was sustained. Thereupon the prisoner excepted.

Verdict, Guilty; Rule for New Trial; Rule discharged; Judgment, and Appeal.

PEARSON, C. J. Whether Louisa Costner "had a bedstead in her house" was a fact irrelevant to the case at the time she was asked the question, so far as then appeared, and of course the evidence was inadmissible and ought to have been rejected, unless the statement of the prisoner's counsel that "they expected to connect it with the case" made it an exception to the general rule. The prisoner's counsel had no legal right to put the question, so it was no error to reject it. Under the circumstances it was a matter within the discretion of the Judge, and this Court has no power to review his decision.

*Haigh v. Belcher*, 32 E. C. L. R. 553, was relied on in the argument before us. There Coleridge, Judge, admitted the evidence, saying, "This is clearly a fact, but from aught that

now appears, quite irrelevant. I must receive the evidence on Mr. Estis' undertaking to show the relevancy hereafter by evidence." This authority would have warranted the Judge in receiving the evidence in our case, but it was clearly a matter of discretion, and is so treated by all the text writers who comment on the case: Roscoe 95, 96. "Circumstances alter cases." In England the barrister who conducts the case in court, is furnished by the attorney who prepares the case out of court, with a "brief," in which is set forth all of the evidence that the party can obtain, and the attorney is held responsible for the accuracy of the brief, which he prepares after a careful examination of the witnesses. In this State the barrister is not assisted by an attorney; he undertakes both offices. Gentlemen of the bar on the circuit do not usually prepare very full briefs, or examine very carefully into the evidence, but rely on what is whispered to them by their clients. This authorizes, if it does not call for, a different exercise of the discretion.

II. The question put to the witness James Davis, was an imputation on his character, and was calculated to degrade him before the jury. His Honor rejected evidence as to his character. In this there is error. Why should the jury have been kept in the dark as to what kind of man this witness was? Why should the case go to them with a cloud over it by reason of "a fact transpiring in the course of the trial, which was a proper subject for remark both by the counsel and the Court?" Garrett's case, Bus. 359.

It was said on the argument, that his Honor rejected the evidence on a supposed rule of law, "an impeaching witness cannot be impeached," and we are told this supposed rule of law is acted upon in that circuit, and is based on the ground of avoiding the inconvenience of an endless process. If the impeaching witness can be impeached, the last witness may also be impeached, and so on *ad infinitum*. This inconvenience cannot occur very often, or be very serious, for the general practice is to call only the most respectable men in the community, as to character, and the instance of calling a witness

of doubtful character, to prove character, is exceptional. Let it be understood that an impeaching witness cannot be impeached, and the exception will soon be the general rule. But be this as it may, *truth* should not be excluded to avoid inconvenience; and it is enough to say that no case, or dictum, or sentence from a text writer was cited to support this supposed rule of evidence; on the contrary, it is laid down by the text writers, that an impeaching witness may be impeached by proof of general character, or on cross-examination, and when that is done the impeaching witness may be supported by proof of general character. Roscoe 96, 2 Phillips 432.

We imagine this supposed rule of evidence had its origin in a misapprehension of the rule, "When a witness on cross-examination is interrogated as to a collateral fact, his answer concludes the matter, and no further evidence of particular facts is admissible, to avoid getting off on a side issue." But the matter is open to evidence of general character; so the error to which we have adverted seems to have been caused by not attending to the distinction between evidence of particular facts, and evidence of general character.

III. The building described by the witness is a barn, both according to the legal acceptation of the word, and also its popular meaning. Ask any man if this building is a barn. He will reply: "If it is not one, I don't know what you would call a barn." The circumstance that a part of the building was used as a stable, does not affect its character as a barn. Indeed, that is usually the case in the middle and western parts of the State. Some people are not fortunate enough to have a barn; as an old out-house used to keep shucks, peas and nubbins in, does not rise to the dignity of a barn in legal acceptation or in common parlance. Laughlin's case, 8 Jon. 454. But in our case there was a substantial building, large enough to hold the horses, and the hay and grain, in the straw and after it was threshed, and also the wagons and other utensils of the farm. It matters not whether the house was built of logs or of stone, or was a frame-house and weather boarded, such a building is a barn, and is under the protection of the

law. The prisoners were not convicted according to the rules of law. Judgment reversed.

This will be certified, &c.

PER CURIAM.     *Venire de novo.*