B. M. ISLER v. HARRIET M. DEWEY, Guard'n. and others.

In answer to evidence of contradictory statements, and for the purpose of corroborating the testimony of the witness, whose veracity has been thus impeached, evidence of the strict integrity of such witness, and of his scrupulous regard for truth is admissible.

(*March* v. *Harrell*, 1 Jones, 329; *State* v. *Cherry*, 63 N. C. Rep. 493, cited and approved.)

CIVIL ACTION, brought by plaintiff to recover possession of a tract of land, tried before his Honor, *Judge Tourgee*, at the Special (December) Term, 1872, of WAYNE Superior Court.

At June Term, 1872, of this Court, a new trial was granted in the case on account of the rejection of certain evidence. See 67 N. C. Rep. 93, as also for a statement of the facts of the case.

Upon the new trial, the plaintiff introduced Samuel Smith, the grantor in the deed of trust, under which the defendants claim title to the land in question. The witness, the case states, was an old man, and testified as to his purpose and intent in executing the said trust. In his testimony he made conflicting and contradictory statements to the plaintiff's counsel, the defendant's counsel and the presiding Judge. Upon his cross-examination he was asked if he ever had solicited one John R. Smith to accept the trusteeship. He replied, that he never had. He was then asked if he had not, at different times and places, (the same being designated,) told divers persons, (naming them,) that the deed of trust from himself to Washington was *bona fide*, and that he was willing for the whole world to know all about it. The witness stated that he did not recollect any such conversations. The persons designated were then introduced by defendants and testified that the conversations referred to in the question to the witness took place as stated and that he, the witness, did make the statements as contained in such question. John R. Smith also testified that

Smith, the witness, had approached him as asked, and solicited him to take the trusteeship.

The plaintiff then offered to introduce evidence that Smith, the witness, was a man of good character. Defendants admitted that Smith was a man of good character, at the same time remarking, " we do not impeach his veracity, but merely his recollection." When the plaintiff offered to show that the witness, Smith, was a person of great excellence of character, the evidence was excluded by the Court, and the plaintiff excepted.

The exceptions to his Honor's charge upon other points need not be stated, as the decision of the Court is upon the point of excluding evidence alone.

There was a verdict in favor of the defendants. Judgment and appeal by the plaintiff.

*Isler* for appellant.
*Smith & Strong*, contra.

SETTLE J. When this case was before us at a previous term, reported in 67 N. C., 93, we held that Samuel Smith, the grantor in the deed of trust to Washington, was a competent witness to prove " that the understanding and agreement between him and Washington, at the time the deed was executed, was that Washington should hold the land and other property therein conveyed, for Smith, until he should be able to pay the debts from other sources," and that this evidence might go to the jury for what it was worth.

Upon a second trial, the plaintiff introduced as a witness the said Smith, who is an old man, when he testified as to his purpose and intent in making said deed; and the case states that in his testimony he made conflicting and contradictory statements to the plaintiff's counsel, the counsel for the defendants and the presiding Judge. Upon cross-examination he was asked if he had ever solicited one John R. Smith to accept the trusteeship. He replied he never had. He was then asked

if he had not at different times and places, mentioning them, told divers persons, giving their names, that the deed in trust from himself to Washington was *bona fide*, and that he was willing for the world to know all about it. He replied that he did not recollect any such conversations.

The persons named were then introduced by the defendants and testified that the conversations, as stated by the defendant's counsel to witness Smith, had taken place at the times and places specified in counsel's questions to said witness. The defendants also introduced John R. Smith, who testified that Samuel Smith had solicited him to accept the trusteeship. The plaintiff then offered to introduce evidence to show the good character of the witness, Samuel Smith, when the defendant's counsel admitted that Smith was a man of good character, remarking, " we do not impeach his veracity, but merely his recollection ;" but the plaintiff insisted upon his right to show that the said witness was a man of great excellence of character, but his Honor excluded the testimony, and the plaintiff excepted.

When the credibility of a witness is attacked from the nature of his evidence, from his situation, from bad character, from proof of previous inconsistent statements, or from imputations directed against him in cross examination, the party who has introduced him may prove other consistent statements, for the purpose of corroborating him. *March* v. *Harrell*, 1 Jones, 329.

And the right to corroborate witnesses, whose testimony has been thus impeached, by proving their good characters, is assumed in the case cited, to be too plain for argument.

The very nature of his evidence, and the peculiar situation of the witness, when he testifies that his own deed was fraudulent, puts him under a cloud, which grows darker when it is shown that his statements have been inconsistent and contradictory.

The bare statement in the record puts an imputation upon the character of the witness, which cannot be removed by the

gracious admission of counsel that they only impeach his memory, and not his character.

Who can tell what impression was made upon the jury, by these circumstances, so damaging to the testimony of the witness?

His character was necessarily impeached, and he therefore had the right to prove a good character, if he could do so.

As a general rule, the character of all witnesses is open to attack, and it would seem but reasonable and fair that they should always have the privilege of showing a good character.

And in the nature of things, the presumption of law, that " the character of a witness is good, until it be shown to be bad," cannot impress a jury as forcibly and favorably as the proof of the fact would do.

Mr. Ball, in the argument of another case, at this term, cited us to several English and American authorities, to show that evidence in support of good character is not admissible until the character of the witness has been attacked by an impeaching witness ; but such is not the rule in this State.

We have followed the reasoning of Mr. Phillips, in his work on Evidence, 1 vol., page 306, quoted by Greenleaf, 521, when he says, " In answer to evidence of contradictory statements, and for the purpose of corroborating the testimony of the witness whose veracity has been thus impeached, it seems reasonable to be allowed to show that he is a man of the strictest integrity, and of scrupulous regard for truth." The last case in our own reports, where the subject is discussed, is *State* v. *Cherry*, 63 N. C., 493. Upon that trial the prisoner introduced one James Davis, as a witness to character only, who testified that the character of certain State's witnesses was bad for virtue and truth. He was then asked by the State if the character of those witnesses was not as good as his own, both for virtue and truth. The prisoner then introduced a witness and proposed to prove the character of James Davis; the State objected, and the objection was sustained.

2

The Chief Justice, in delivering the opinion of the Court, says : " The question put to the witness, Davis, was an imputation on his character, and was calculated to degrade him before the jury.  *  *  *  Why should the jury have been kept in the dark as to what kind of man this witness was ?  *  *  * It was said on the argument that his Honor rejected the evidence on a supposed rule of law, " an impeaching witness cannot be impeached ;" and we are told this supposed rule of law is acted upon in that circuit, and is based on the ground of avoiding an endless process. If the impeaching witness can be impeached, the last witness may also be impeached, and so on *ad infinitum.* This inconvenience cannot occur very often, or be very serious, for the general practice is to call only the most respectable men in the community, as to character, and the instance of calling a witness of doubtful character is exceptional. Let it be understood that an impeaching witness cannot be impeached, and the exception will soon be the general rule. But be this as it may, *truth* should not be excluded to avoid inconvenience.  *  *  *  We imagine this supposed rule of evidence had its origin in a misapprehension of the rule, " When a witness on cross-examination is interrogated as to a collateral fact, his answer concludes the matter, and no further evidence of particular facts is admissible, to avoid getting off on a side issue.

But the matter is open to evidence of general character, so the error to which we have adverted seems to have been caused by not adverting to the distinction between evidence of particular facts and evidence of general character."

There is error.