[No. 1650.]

FRANK DIXON v. THE STATE.

1. EVIDENCE.—PROOF OF THE GENERAL GOOD CHARACTER OF AN IMPEACHED WITNESS FOR TRUTH is admissible in this State when his testimony has been assailed merely by proof of conflicting statements previously made by him. See the opinion for a discussion of this question, and for a collocation of authorities upon it, *pro and con.*
2. EVIDENCE—RES GESTÆ—CONTRADICTING PROOF.—In a trial for assault with intent to murder, the State was allowed, over objection, to ask a witness for the defense if he and others, after the alleged assault, did not demand of a State's witness the defendant's pistol, and was subsequently allowed to introduce proof contradicting the witness's denial that he had made such a demand. *Held,* error. This proof had no relevancy to the *res gestæ*; and, inasmuch as the matter inquired of was collateral to the issue, the answer of the witness was not subject to contradiction by the party putting the question.

APPEAL from the District Court of Fayette. Tried below before the Hon. L. W. Moore.

This appeal is from a conviction for an assault with intent to murder. The penalty assessed against the appellant was a term of two years in the penitentiary.

The facts germane to the rulings are succinctly but clearly stated in the opinion.

*A. P. Bagby, John Lane* and *Timmons & Brown,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. Defendant was convicted of an assault upon one T. S. Doggett with intent to murder said Doggett. By

the testimony of B. D. Shropshire, a witness for the State, all the facts constituting the offense charged were fully established. In rebuttal of the State's case, as made out by the testimony of the witness Shropshire, the defendant introduced T. S. Doggett, the party alleged to have been assaulted, and a witness named Guthrie, and proved by them a state of facts which entirely destroyed the case made by the State. In other words, while the State's witness Shropshire testified that the defendant assaulted Doggett with a pistol and shot at him once, and attempted to shoot at him again, defendant's witnesses, Doggett and Guthrie, testified that no assault was committed by defendant upon Doggett.

This being the state of the evidence, the conviction or acquittal of the defendant depended mainly, if not solely, upon the credibility of the three principal witnesses named. If the jury should give full credit to Shropshire's testimony, they must necessarily convict. If they should give credit to that of Doggett and Guthrie, they must necessary acquit; or, if they should credit the testimony of Doggett and Guthrie to the extent sufficient to raise in their minds a reasonable doubt of defendant's guilt, as established by the testimony of Shropshire, they must acquit. It therefore became a matter of vital importance to the defendant that the testimony of Doggett and Guthrie, and particularly of Doggett, he being the alleged injured party, should go before the jury as free as possible from all suspicion, and as plainly marked with the stamp of credibility as circumstances and the law would permit.

Upon cross-examination of the witness Doggett, the proper basis was laid to prove that he had made prior contradictory statements in relation to the alleged assault, directly contradicting the matters testified to by him. These contradictory statements were there fully proved by evidence introduced for that purpose by the State, and the effect of such proof, if not counteracted in some way, would ordinarily be sufficient to discredit entirely the testimony of the witness. To counteract the effect of this impeaching testimony, and to support and give credit to the witness Doggett, the defendant offered several witnesses to prove that they were well acquainted with the general reputation of the witness, in the community in which he lived, for truth and veracity, and that it was good. To this testimony the district attorney objected, and the objection was sustained by the court, and the defendant excepted.

We have thus presented to us the question: Can a witness's testimony, which has been impeached merely by proof of prior conflicting statements made by him, be sustained by calling witnesses to show that his reputation for truth and veracity is good? Upon this subject Mr. Greenleaf says: "Where evidence of contradictory statements by a witness. or of other particular facts. as, for example, that he has been committed to the house of correction. is offered by way of impeaching his veracity, his general character for truth being thus in some sort put in issue. it has been deemed reasonable to admit general evidence that he is a man of strict integrity, and scrupulous regard for truth." (1 Greenlf. Evid., sec. 469.) It has been denied by respectable authority that the text of Mr. Greenleaf, above quoted, is sound law. (*Russell* v. *Coffin*, 8 Pick., 143 to 154; *Harrington* v. *Lincoln*, 4 Gray, 563; *Heywood* v. *Reed*, 4 Gray, 574; *Brown* v. *Mooers*, 6 Gray, 457; *Stamper* v. *Griffin*, 12 Ga., 450; *Newton* v. *Jackson*, 23 Ala., 335.) But the weight of authority, we think, is in support of the text, and in favor of the admissibility of such evidence. (*Rex* v. *Clarke*, 2 Stark., 241; *Paine* v. *Tilden*, 20 Vt., 554; *Sweet* v. *Sherman*, 21 Vt., 23; *Webb* v. *The State*. 29 Ohio St., 351; *Hadjo* v. *Gooden*, 13 Ala., 718; *The State* v. *Cherry*, 63 N. C., 493; *Isler* v. *Dewey*, 71 N. C., 14; *People* v. *Rector*, 19 Wend., 569; *Clem* v. *The State*. 33 Ind., 418.)

In our own State the text of Mr. Greenleaf, above quoted, was cited and adopted as the correct rule by our Supreme Court in the case of *Burrell* v. *The State*, 18 Texas, 713. In that case the court say: "When the credit of the witness had been impeached by proof that he had made a statement contrary to what he had testified on the trial, it was competent to admit evidence of his general good character for truth and veracity." If the evidence is competent and material, it is admissible, and it would be error to reject it when offered in a proper case. We think the Burrell case is conclusive of the question in this State, and that the rule there announced is not only supported by the weight of authority, but is in accordance with reason and justice. In the case before us, the credit of defendant's principal witness was directly attacked in a manner calculated to seriously damage it, and thereby prejudice the defendant's case. It would certainly be most unjust to deny the defendant the privilege of removing, if he could, from the minds of the jury the unfavorable opinion as to the credibility of his witness likely to be produced by the impeaching evidence of the State. To prove that the general

reputation of the witness for truth and veracity was good in the community in which he resided might fully establish in the minds of the jury the credibility of the witness. or, at least, might so far accomplish that effect as to create in the minds of the jury a reasonable doubt as to the guilt of the defendant. Upon the credibility of this witness mainly rested the fate of the defendant. His testimony was to be weighed in the balances against that of the State. By the attack made by the State upon his testimony, its weight was undoubtedly lessened. He had the right to cast into his side of the balances the good character of his witness for truth, that the jury might weigh it in connection with all the other evidence undergoing their consideration. We think the court erred in rejecting the evidence offered by the defendant in support of the credibility of the witness Doggett; and, because of this error, the judgment must be reversed and the cause remanded.

Defendant's witness Guthrie was asked, on cross-examination by the district attorney, if he did not, on the night of the alleged assault, and after it occurred, demand of the State's witness Shropshire the defendant's pistol. Guthrie answered that he did not make such demand. The district attorney was then permitted, over the objection of the defendant, to prove that the witness Guthrie, the defendant and two other parties, after the alleged assault, and, on the same night, met the witness Shropshire, and. drawing their pistols upon him, made him hold up his hands, and demanded of him the defendant's pistol, which pistol the witness Shropshire did not have, the same having been taken from defendant on the occasion of the alleged assault by the witness Doggett.

It is contended. by defendant's counsel that this testimony was irrelevant to the issue and inadmissible, and that its admission was calculated to injure the defendant. In so far as regards the issue of defendant's guilt, we think this testimony was very clearly inadmissible, as it did not tend to throw any light whatever upon the assault alleged to have been committed by defendant upon Doggett. It was no part of the *res gestœ* of that transaction, but was subsequent thereto—was with a different party, and entirely independent of it. If admissible for any purpose, it was for the sole purpose of contradicting and discrediting the witness Guthrie. Was it admissible for this purpose? Mr. Wharton says: "When a witness is cross-examined on a matter collateral to the issue, his answer cannot be subse-

quently contradicted by the party putting the question. The test of whether a fact inquired of in cross-examination is collateral, is this: Would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea?" (Whart. Crim. Evid., sec. 484.)

Applying the test above stated to the question as presented in this case, we are of the opinion that the matter inquired about on the cross-examination of the witness Guthrie was a matter collateral to the issue in the case, which the State was not entitled to prove as a part of its case; and was not entitled to contradict the answer of the witness in regard thereto. In our opinion the court erred to the injury of the defendant in admitting the testimony concerning the attack made upon the witness Shropshire.

Objections are urged by defendant to the charge of the court, but we think they are not well taken. We can perceive no error in the charge.

Because of the errors we have mentioned, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered December 8, 1883.