## FRANK DIXON vs. THE STATE.

COURT OF APPEALS, TYLER TERM, 1883.

*Practice—Proof of general character of a witness.* The rule obtains in this State that when the credit of a witness, who has deposed in the case, has been impeached by proof that he had made a statement contrary to that he had testified on the trial, it is competent to admit evidence of his general good character for truth and veracity.

*Same—Impeaching Testimony.* It is a settled rule that, when a witness is cross-examined on a matter collateral to the issue, his answer cannot be subsequently contradicted by the party putting the question. The test of whether a matter inquired of in cross-examination is collateral is : Would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea ? Note the opinion for matter inquired into by the State upon cross-examination, *held*, collateral to the issue.

Appeal from Fayette County.

*Bagby, Lane, Timmons and Brown* for appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

Opinion by Willson, J.

Defendant was convicted of assault upon one T. S. Daggett with intent to murder said Daggett. By the testimony of one B. D. Shropshire, a witness for the State, all the facts constituting the offense were fully established. In rebuttal of the State's case as made

out by the testimony of the witness, Shropshire, the defendant introduced T. S. Daggett, the party alleged to have been assaulted, and a witness named Guthrie, and proved by them a state of facts which entirely destroyed the case made by the State. In other words while the State's witness, Shropshire, testified that the defendant assaulted Daggett with a pistol and shot at him once, and attempted to shoot at him again, defendant's witnesses, Daggett and Guthrie, testified that no assault was committed by defendant upon Daggett. This being the state of the evidence, the conviction or acquittal of the defendant depended mainly, if not solely, upon the credibility of the three principal witnesses named. If the jury should give full credit to Shropshire's testimony, they must necessarily convict. If they should give credit to that of Daggett and Guthrie they must necessarily acquit; or if they should credit the testimony of Daggett and Guthrie to the extent sufficient to raise in their minds a reasonable doubt of defendant's guilt as established by the testimony of Shropshire, they must acquit. It therefore became a matter of vital importance that the testimony of Daggett and Guthrie, particularly that of Daggett, he being the alleged injured party, should go before the jury as free as possible from suspicion, and as plainly marked with the stamp of credibility as circumstances and law would permit.

Upon cross-examination of the witness Daggett, the proper basis was laid to prove that he had made prior contradictory statements in relation to the alleged assault, directly contradicting the matters testified to by him. These contradictory statements were then fully proved by evidence introduced for that purpose by the State, and the effect of such proof, if not counteracted in some way, would ordinarily be sufficient to discredit entirely the testimony of the witness. To counteract the effect of this impeaching testimony, and to support and give credit to the witness Daggettthe, defendant offered several witnesses to prove that they were well acquainted with the general reputation of the witness in the community in which he lived, for truth and veracity, and that it was good. To this testimony the district attorney objected, and the objection was sustained by the court, and the defendant excepted. We have thus presented to us the question : "Can a witness' testimony, which has been impeached merely by proof of prior conflicting statements made by him, be sustained by calling witnesses to show that his reputation

for truth and veracity is good ?" Mr. Greenleaf says : "Where evidence of contradictory statements by a witness, or of other particular facts, as for example that he has been committed to the house of correction, is offered by way of impeaching his veracity, his general character for truth being thus in some sort put in issue, it has been deemed reasonable to admit general ᶫevidence that he is a man of strict integrity and scrupulous regard for truth." 1 Greenl. Ev. Sec. 469.

It has been denied by respectable authority that the text of Mr. Greenleaf above quoted is sound law. Russell vs. Coffiin, 8 Pick, 143–15; Harrington vs. Lincoln, 4 Gray, 563; Heywood vs. Reed, 4 Gray, 574; Brown vs. Mevers, 6 Gray, 457; Stamper vs. Griffin, 12 Ga., 450; Newton vs. Jackson, 23 Ala., 335.

But the wieght of authority is, we think, in support of the text, and in favor of the admissibility of such evidence. Rex vs. Clark, 2 Stark, 241; Paine vs. Tilden, 20 Vert., 554; Sweet vs. Sherman, 21 Vert.; Webb vs. State, 29 Ohio St., 351; Hadjo vs. Gooden, 13 Ala., 718; State vs. Cherry, 63 N. C., 493; Isler vs. Dewey, 71 N. C., 14; People vs. Rector, 19 Mend., 569; Clem vs. State, 33 Ind., 418.

In our own State the text of Mr. Greenleaf, above quoted, was cited and adopted as the correct rule by our supreme court in the case of Burrel vs. The State, 18 Texas, 713. In that case the court says: "When the credit of the witness had been impeached by proof that he had made a statement contrary to that he had testified on the trial it was competent to admit evidence of his general good character for truth and veracity." If the evidence is competent and material it is admissible, and it would be error to reject it when offered in a proper case.

We think the Burrell case is conclusive of the question in this State, and that the rule there announced is not only supported by the weight of authority, but is in accordance with reason and justice. It the case before us the credit of defendant's principle witness was directly attacked in a manner calculated to seriously damage it, and thereby prejudice the defendant's case. It would certainly be most unjust to deny the defendant the privilege of removing, if he could, from the minds of the jury, the unfavorable opinion of the credibility of his witness, likely to be produced by the impeaching evidence of the State. To prove that the general reputation of the witness for truth and veracity was good in the community in which he resid-

ed, might fully establish in the minds of the jury the credibility of the witness, or at least might so far accomplish that effect as to create in the minds of the jury a reasonable doubt as to the guilt of the defendant. Upon the credibility of this witness mainly, rested the fate of the defendant. His testimony was to be weighed in the balances against that of the State.

By the attack made by the State upon his testimony it was undoubtedly lessened. He had the right to cast into his side of the balances the good character of his witness for truth that the jury might weigh it in connection with all the other evidence undergoing their consideration. We think the court erred in rejecting the evidence offered by the defendant in support of the credibility of the witness Daggett, and because of the error, the judgment must be reversed and the cause remanded.

Defendant's witness, Guthrie, was asked on cross-examination by by the district attorney if he did not, on the night of the alleged assault and after it occurred, demand of the State's witness, Shropshire, the defendant's pistol. Guthrie answered that he did not make any such demand. The district attorney was then permitted, over the objection of the defendant, to prove that the witness Guthrie, the defendant and two other parties, after the alleged assault and on the same night, met the witness Shropshire, and drawing their pistols upon him, ordered him to hold up his hands, and demanded of him the defendant's pistol, which the witness Shropshire did not have, the same having been taken from defendant on the occasion of the alleged assault by the witness Daggett. It is contended by defendant's counsel that this testimony was irrelevent to the issue, and inadmissible, and that its admission was calculated to injure the defendant. In so far as regards the issue of defendant's guilt we think this testimony was very clearly inadmissble, as it did not tend to throw any light whatever upon the assault alleged to have been committed by the defendant upon Daggett. It is no part of the *res gestae* of that transaction, but was subsequent thereto—was with a different party, and entirely independent of it. If admissible for any purpose, it was for the sole purpose of contradicting and discreting the witness Guthrie. Was it admissible for this purpose? Mr. Wharton says: "When a witness is cross-examined on a matter collateral to the issue his answer cannot be subsequently contradicted by the party putting the question. The test of whether a mat-

ter inquired of in cross-examination is collateral is this : 'Would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea ?'" Whart. Cr. Ev., Sec. 484. Aplying the test above stated to the question as presented in this case, we are of the opinion that the matter inquired about on the cross-examination of the witness Guthrie was a matter collateral to the issue in the case, which the State was not entitled to prove as a part of its case, and was not therefore entitled to contradict the answer of the witness in regard thereto. In our opinion the court erred to the injury of defendant in admitting the testimony concerning the attack made upon the witness, Shropshire.

Objections are urged by defendant to the charge of the court, but we think they are not well taken. We can perceive no error in the charge.

Because of the errors we have mentioned the judgment is reversed and the cause is remanded.