## HADJO, use, &c. v. GOODEN.

1. A witness having sworn to facts, tending to prove a payment of the claim in suit, together with other demands, between the same parties, in October, 1834, it is not admissible to produce one of the claims referred to by the witness as being then paid, (but not the one in suit,) upon which was a credit, bearing date 1st February, 1835, either to discredit the witness, or to show that the claim sued on was a subsisting liability.

2. When proof has been adduced, that a witness had made contradictory statements, in respect to the facts he then deposed to, it is competent to sustain his credibility by proof of general good character.

3. A witness may be examined to prove character, who swears that he is acquainted with the general character for truth, of the witness assailed, in the neighborhood in which he lives, although he admits he was acquainted only with some of his neighbors, and had never heard any of them speak of his character for truth, or heard it called in question.

Error to the Circuit Court of Randolph. Before the Hon. G. Goldthwaite.

This was an action of debt at the suit of the plaintiff, in error, on a bill single for $127 25. The cause being submitted to a jury, a verdict was returned for the defendant, and judgment was thereon rendered. Upon a bill of exceptions sealed at the plaintiff's instance, the following points are now presented for consideration. 1. Defendant introduced one Sharp as a witness, who testified, that in October, 1834, about two months after the writing declared on was executed, the nominal plaintiff, who is a Creek Indian, with four other Indians of the same tribe, to wit: Sally, Walla, Pinca, and Wadsworth, came to witness, and showed him the specialty in suit, and four other notes made by the defendant, payable to the other four Indians respectively: In a day or two afterwards, these five Indians met with defendant, had some conversation and transactions with him ; immediately thereafter, witness saw the defendant have several notes in his hands, and the Indians remarked the defend-

ant was a good man, and had paid off the notes. On cross examination, witness stated, that a note made by the defendant, and attested by S. F. Clawson, dated 28th August, 1834, for the payment of $61 25, one day after date, to *Walla*, was one of the five notes referred to. He also stated, that he had not seen this note since October, 1834, and had never seen, previous to the trial, an indorsement thereon as follows, viz: "Received on the within note, $34 74. February 1st, 1835. A. ELSTON." He however knew A. Elston, to be an honest man, and that the indorsement was in his hand-writing. After the foregoing testimony was given, and the defendant had closed his evidence, the plaintiff offered to read to the jury the last mentioned note and indorsement, for the purpose of destroying or weakening the force of the evidence of Sharp, as to the payment of the note declared on ; but the defendant objected to the admission of this evidence, and his objection was sustained.

2. In the course of the cross-examination of Sharp, the plaintiff asked him whether, on a trial in the circuit court of Benton, at the Fall term, 1842, in a suit on the note to Sally, against the present defendant, he did not testify, that he knew nothing about the note now in controversy, or any of the other notes, except that payable to Sally. Witness answered, that he did not recollect ever to have so testified, but thought he never did give testimony to that effect. Plaintiff then introduced one Kennedy, who testified that he had heard Sharp examined, on the trial of the case of Sally against the defendant, at the term of the court supposed by the cross-examinstion, when he testified that he did not know any thing about the note now sued on, or either of the others about which he had spoken, but the one payable to Sally. Here the plaintiff again closed his evidence, without attempting to prove any thing in respect to the general character of Sharpe. The defendant then proposed to prove the general character of Sharp for truth, that the witness offered was acquainted with it, and would believe him on oath. To this testimony the plaintiff objected, but his objection was overruled, and the evidence admitted.

3. Defendant then offered a witness, who stated on his examination in chief, that he was satisfied he was acquaint-

ed with the general character of the witness, Sharp, for truth, in the neighborhood in which he (Sharp) lived, and that he would believe him on oath.    On cross-examination this witness stated he was acquainted with some of Sharp's neighbors, but not with all of them ; he had never heard any of Sharp's neighbors speak of his character for truth, or known it to be called in question ; he had never lived in Sharp's neighborhood, nor nearer to him than twelve miles.  Plaintiff moved the court to exclude each portion of this witnesses testimony ; but the court refused to exclude any part of it, which was given on the examination in chief.

S. F. Rice, for plaintiff in error.

L. E. Parsons, for the defendant in error.

COLLIER, C. J.—1. The production of the defendant's note to "Walla," with the indorsement of a partial payment, dated in 1835, and subscribed by A. Elston, was not admissible to impair or destroy the effect of Sharp's testimony, that it had been paid in 1834.    The payment of that note was not an inquiry within the issue.    Although the witness stated he was informed by the payee that it was paid, yet if his information was incorrect, what he said could not in any manner disprove what was stated by the nominal plaintiff in the present case, as to the discharge of the note now in suit. The evidence proposed was *res inter alios*—does not appear to have been offered to impugn the veracity of Sharp, nor could it have had that effect.    If it was material to ascertain whether the note to "Walla" was unpaid, then perhaps its possession by the payee, or some other person than the maker, might contribute something to show its subsisting liability.

2. The testimony adduced by the plaintiff, that Sharp, upon the trial of another cause in which he had been examined as a witness, denied that he knew any thing about the note now sought to be recovered, went to show that he made contradictory statements, and of course to impair, if not directly to assail his veracity.    Under such circumstances, it was certainly allowable to sustain the credibility of the witness, by proof of his general character, and that he would be

believed on oath. 8 Porter's Rep. 314; 5 Cow. R. 314, 320; 1 Greenl. Ev. 521.

3. In Sorrelle v. Craig, 9 Ala. Rep. 534, we say, the regular mode of examining into the general character, is, to inquire of the witness whether he knows the general reputation of the person in question among his neighbors; and what that reputation is, and whether from such knowledge the witness would believe that person upon his oath. In answer to such evidence the other party may cross-examine those witnesses as to their means of knowledge, and the grounds of their opinion; or may attack their general character, and by fresh evidence support the character of his own witness. The inquiry must be made as to general character where he is best known. It is not enough that the impeaching witness professes merely to state what he has heard others say; for those others may be but few. He must be able to state what is *generally* said of the person by those among whom he dwells, or with whom he is chiefly conversant; for it is this only which constitutes his general reputation, or character. And ordinarily the witness himself ought to come from the neighborhood of the person whose character is in question. If he is a stranger sent hither by the adverse party to learn his character, he will not be allowed to testify as to the result of his inquiries. See also 1 Greenl. Ev. 512-13; 1 Phil. Ev. 212; 11 Sergt. & R. Rep. 198; 14 Wend. Rep. 105.

In the case at bar, the witness stated that he was satisfied he was acquainted with Sharp's general character for truth in his (Sharp's) neighborhood, and that he would believe him on oath. On cross-examination he stated that he was acquainted with some of Sharp's neighbors, but not with all of them—he had never heard Sharp's neighbors speak of his character for truth, and had never known his character called in question—he never lived in Sharp's neighborhood, nor nearer to him than twelve miles.

Here the supporting witness avows a knowledge of Sharp's general character for truth in the neighborhood of the latter. It does not appear through what medium he became acquainted with it; although he was acquainted with some of his

91

neighbors, he never heard them speak of it, or his character questioned. If the plaintiff had thought proper, he might have cross-examined the witness more minutely and searchingly, and if possible entirely destroyed the effect of his evidence. To acquire a knowledge of a person's general character, it is not necessary to know *all* his neighbors, or to hear any one speak of his disposition to tell the truth, or his integrity drawn in question. His virtues may be universally acknowledged, and the bright spots so prominent that his reputation exhibits no dark traits. The veracity of such a man would rarely be spoken of, and if at all, in no other than terms of commendation. What then the witness stated on cross-examination, does not show his incompetency to support Sharp. Though he lived twelve miles distant from him, it does not appear that he did not often visit him, or the neighborhood, and hear many of his neighbors speak of him, and the estimate in which he was holden among them. The case upon this point is altogether unlike Sorrelle v. Craig, *ut supra;* for there the witness on cross-examination, disavowed all knowledge of the estimation in which the person impeached was held in the neighborhood of his residence.

There is then no error in the ruling of the circuit court, and its judgment is therefore affirmed.

CHILTON, J., having been of counsel, did not sit in this cause.