TURNER *vs.* THE STATE OF GEORGIA.

1. Grounds of error abandoned will not be considered.

(a.) Where, after the discharge of the traverse jurors for the first week of the regular term of court, but during the attendance of those summoned for the second week, the judge ordered that the traverse jurors of the regular term attend a special term to be held at a time fixed, a reasonable construction of such order would be, that the jurors in attendance when the order was put upon the minutes, should attend such special term, not those which had been discharged.

(b.) The court may draw a new jury for a special term, or may compel the attendance of those from the regular term; and jurors from the regular term, competent when drawn, are competent on the

trial, although there may have been a revision of the jury box since they were drawn.

2. Motions for continuance are addressed to the sound discretion of the presiding jûdge, and unless abused, such discretion will not be controlled.

(*a.*) A motion for continuance being based on the absence of a witness who was in another state, and whose testimony would be only corroborative of that introduced, and no means of procuring the attendance of such witness being shown, there was no abuse of discretion in refusing the continuance.

(*b.*) Where a continuance was asked in a criminal case on the ground of the sickness of one of defendant's attorneys, but the defendant swore that another one of his attorneys, of whom he had four, was leading attorney, and did not swear that he could not go safely to trial without the services of the absent attorney, there was no abuse of discretion in refusing the continuance; nor was it rendered necessary, on a renewal of the motion, because of the introduction of testimony tending to show that the absent attorney was the leading one for the defendant.

3. Where, on a trial for murder, another indictment for murder against the defendant, in which the deceased was the prosecutor, was admitted in evidence, it was not error of which the defendant could complain that the court confined the jury to the consideration of that indictment for the purpose of illustrating motive or malice towards the deceased, and stated that the presumption was that the accused was innocent in that case.

4. A witness who had long known the deceased could give his opinion of the latter's character as dangerous or otherwise.

(*a.*) Whether a witness is successfully impeached is a question for the jury. If so impeached, he should not be believed; if corroborated, he may be believed, and the corroboration may be by circumstances or by other witnesses.

(*b.*) Section 4234 of the Code was inapplicable to the case.

5. Where one knows the general character of a witness in the town where he once lived, he may testify as to that character for veracity, although the witness has moved several miles into the country. The weight of such testimony is for the jury.

(*a.*) A charge that "inasmuch as murder embraces the lower grades of homicide, the defendant can not only be convicted of murder under the indictment in this case, if the evidence should authorize it, but if not guilty of murder may be guilty of voluntary manslaughter, if the evidence require it," was not error. The use of the words "authorize" and "require," in order to vary the expression, could not harm the defendant.

(*b.*) The verdict is supported by the evidence.

6. Where the surety on a defendant's bond in a criminal case requested

the presiding judge to say to the sheriff that if the defendant was tried, he desired to be relieved as soon as the trial commenced, which message was delivered, and after a motion for a continuance had been overruled, and at the dinner recess, before any of the jury were empanelled, the defendant was taken into custody by the sheriff, there was nothing in this to require a new trial, it not appearing that the defendant was kept in such custody as not to have freedom of intercourse and consultation with his counsel.

7. Unless the attention of the court is called to the use of vituperation by counsel towards defendant in a criminal case, and the making of statements of fact outside of the evidence, a failure to stop counsel in argument is not good ground for new trial.

8. Where allegations of partiality on the part of a juror are met and rebutted by his own affidavit and those of others, showing his impartiality, sustaining his character for uprightness and truthfulness, and that bad feeling existed between him and the witnesses who testified as to his partiality, there was no error in refusing a new trial.

November 13, 1883.

Criminal Law. Continuance. Attorney and Client. Evidence. Witness. Charge of Court. Jurors. Before Judge HARRIS. Meriwether Superior Court. December Special Term, 1882.

Pleasant M. Turner was indicted for the murder of John E. Shuttles.

On the trial, the evidence showed that the defendant shot Shuttles in the back with a pistol and killed him. The defence was that the deceased and defendant had had numerous difficulties; that, before the killing, the deceased had threatened the life of defendant; that he had pursued the defendant about the town of Greenville on the day of the killing, was armed, and sought to force a difficulty with the defendant, who avoided him; that he finally followed defendant into a bar-room where the killing occurred; that the deceased was drinking, and when in that condition was a violent and dangerous man; and defendant's own safety required that he commit the homicide.

In opposition to this, the state introduced testimony to show that, at the time of the homicide, defendant had just taken a drink, and was standing in the bar-room; that the deceased came in, and walked past the defendant without noticing him, and that the defendant shot him in the back without saying a word; that after the difficulty or threatened conflict set up by the defence, there had been a reconciliation, and no danger was imminent when the homicide took place; also, that defendant had made some threatening speeches in regard to the deceased, and had armed himself during the morning preceding the killing.

The evidence was voluminous, and, in parts, conflicting, but it is unnecessary for it to be set out in detail.

The jury found the defendant guilty. He moved for a new trial on the following grounds:

(1), (2), (3.) Because the verdict is contrary to law and evidence.

(4), (5.) [Abandoned.]

(6.) Because the court, on demurrer, struck the motion made by defendant to quash the panel of jurors on the following grounds: First, [abandoned.] Second, because, at the August term of court, 1882, the court passed an order that the jurors impanelled at that term should attend a special term at which the trial took place, but, in fact, only the jurors of the second week of the August term attended the adjourned term, and were put upon the defendant, and the jury of the first week of the August term were entirely omitted. [The August term lasted two weeks. Jurors were impanelled, attended during the first week and were discharged. Other jurors were impanelled, and upon the passage of the order they attended the special term.] Third, because the jury box was revised August 7, while the order requiring the attendance of the jurors at the special term was passed August 30; and defendant was entitled to have a jury drawn after the revision.

(7), (8.) Substantially the same as (6).

(9.) Because the court refused to continue the case on the ground of the absence of one Carlile. [It appeared that the witness had moved to Florida, and his testimony, if obtained, would be cumulative to that which was introduced.]

(10.) Because the court refused a continuance on the ground of the sickness of A. H. Freeman, Esq., one of counsel for defendant, he being present but unable to participate actively in the case. [It appeared that defendant was represented by four attorneys, and there was some question as to who was the leading one. The defendant stated that he considered A. H. Cox, Esq., as his leading counsel. The motion was renewed later on, and other testimony was introduced to show that Freeman was most familiar with the case, and had been first employed. The motion was first made after the beginning of the introduction of testimony, when Freeman became so unwell as not to be able to give his usual attention to the case.]

(11.) Because the court refused to continue, on the ground just stated, the motion being again urged later in the trial.

(12.) Because the court erred in the following practice: An indictment for a former homicide against the defendant was put in evidence to show that the deceased appeared as prosecutor therein. The court remarked, in admitting the indictment, "It is simply the isolated fact that he was prosecutor in that case alone. That is all the jury can consider in reference to that testimony."—The objection was that this was an expression of opinion.

(13.) Because the court admitted the following testimony of Adams, one of the witnesses: "I would not consider him (deceased) a dangerous man—a man calculated to disturb a peaceable community, unless he was imposed on. I do not think he was afraid of anybody. I don't think he would raise a difficulty." [The witness testified afterwards that he did not know what people said of the deceased, or what was his general reputation in the neigh-

borhood. The objection was that the opinion of the witness as to the character of deceased was inadmissible, except as to his general reputation. The witness testified that he was well acquainted with the deceased; had known him ever since the war; and then gave his opinion as stated.]

(*a.*) Because the court charged as follows: "An indictment has been offered in evidence against the defendant, in which the deceased was prosecutor. This is offered to illustrate, if it does, the question of motive. The law presumes the defendant is not guilty of that charge, and you will only consider this evidence on the question of motive."

(*b.*) Because the court charged that a witness, when successfully impeached, should not be believed; it is for the jury to determine whether a witness has been successfully impeached or not; a witness, when impeached, if corroborated by other witnesses or circumstances, may be believed.

(*c.*) Because the court failed to give section 4334 of the Code in charge.

(14.) Because the court allowed the testimony of a witness, introduced for the purpose of impeaching another, to the effect that he had known the latter, who had been a drayman in the town of Greenville for about a year, but his home, at the time of the trial, was about four miles in the country; that he could only answer as to his character in that town—how he was regarded there—and not as to his general character.

(*a.*) Because the court charged as follows: "Inasmuch as the crime of murder embraces the lower grades of homicide, the defendant can be not only convicted of murder, under the bill of indictment in this case, if the evidence should authorize it, but if not guilty of murder, may be convicted of voluntary manslaughter, if the evidence require it."

(*b.*) Because the verdict was contrary to the charge of the court.

(15.) Because, after overruling the motion for a continuance, the judge, in open court, instructed the sheriff to take the prisoner into custody, and from that time the defendant was kept in the court house under the surveillance of guards. [The court stated in a note that one of the securities on defendant's bond requested the presiding judge to say to the sheriff that if defendant was tried, he desired to be relieved as soon as the trial commenced; that this message was delivered, and after the overruling of the motion for continuance, at the dinner recess, and before any of the jury were impanelled, the defendant was taken into custody by the sheriff, on his own motion.]

(16.) Same as (21.)

(17.) to (20.) Because C. D. Phillips, foreman of the jury, and William Strozier and C. J. Jackson, members of the jury, were not impartial. [Numerous and conflicting affidavits were introduced by both sides on this subject. On the one hand, it was sought to show that these jurors had made remarks unfavorable to the defendant before the trial. In the case of the juror Jackson, the remarks were to the effect that he had stated that, if he were on the jury, he would hang defendant, and he "hoped to God" he would get on the jury to help hang him. On the other hand, affidavits of the jurors were introduced denying the making of improper statements, and asserting their impartiality; also affidavits of all the jurors of the impartiality of the verdict; that the whole jury thought defendant guilty, and the only question discussed was as to recommending that he be imprisoned for life, and that this was decided almost at once in favor of capital punishment. As to statements made by Jackson, affidavits of several members of a family, known as the Coleman family, were introduced in favor of the movant. The juror stated that there was ill feeling between him and them, and that they were seeking to injure him in public estimation by their affidavits. Other affidavits were introduced on this sub-

ject, and also sustaining the credibility of the different affiants.]

(21.) Because of the use of vituperation concerning the defendant by counsel for the state, in his concluding argument, without restraint by the court. [It appeared that, on a previous interruption by counsel for defendant, counsel for the state replied that defendant's counsel had agreed not to interrupt him. This was admitted; argument proceeded, and the vituperative language was used afterwards without interruption.]

The motion was overruled, and defendant excepted.

A. H. FREEMAN; W. A. TURNER; H. W. HILL; A. H. COX; P. F. SMITH, for plaintiff in error.

H. M. REID, solicitor general; J. W. PARK; B. F. McLAUGHLIN; T. A. ATKINSON, for the state.

JACKSON, Chief Justice.

The defendant was indicted for murder, found guilty, and sentenced to suffer capital punishment therefor.

1. The verdict is supported by evidence enough to uphold it, and, therefore, is not contrary to law because without that support. It remains, then, to see whether it be illegal and should be set aside, because of some illegal ruling of the presiding judge, by which the preservation of law and the ends of justice make a new trial proper. The case will be reviewed by us on the points grouped and argued by the able and distinguished counsel who pressed, with great earnestness and acumen, the cause of his unhappy client before this court.

The first three grounds of the motion are announced by him as formal. The fourth and fifth grounds, in so far as they relate to the order of a special term for the trial of defendant, were abandoned; and upon the sixth ground, the first position on which counsel stood and fought was

taken and maintained, as best could be done.   It is a motion to quash the panel of jurors, on the following grounds :

(1.) The term of court was not lawfully called and not a lawful court.   This ground was abandoned.

(2.) The judge ordered that the petit or traverse jurors impanelled at the August term, 1882, do attend this special court, and the traverse jury now put upon defendant is not composed of said traverse or petit jury of said August term, 1882, but the entire traverse jury of the first week of said court has been left off of the list served on defendant and put upon him ; and only the traverse jurors for the second week are in attendance and put upon the defendant.

So far as this point is concerned, the facts are that the traverse jurors for the first week . had been discharged when the order was taken that the traverse jurors of the regular term be ordered to attend the special term, and that order necessarily meant the traverse jurors in attend · ance when the order was put on the minutes, and not those discharged ; that is, it meant those of the second week and not those of the first.   It could not have meant anything else, for the reason that forty-eight jurors of the regular panels, called to serve at different times, could not compose a panel of forty-eight to be put on the prisoner, but the first twenty-four and talesmen always would make such panel first put on the prisoner as the array.   So that the court was right so to construe its own order and to tell the sheriff to summon under it only the traverse jurors of the second week of the regular term for the special term.

(3.) The motion to quash the array was based, thirdly, on the ground that the jury-box had been revised since jurors were drawn for the regular term, and therefore, the defendant was entitled to a newly drawn jury for the special term.   But the law allows the court, either to draw a new jury for the special term, or to compel the attendance of those from the regular term.   Code, §3245.   It is

well settled that jurors, competent when drawn, are competent on the trial. 42 *Ga.*, 9; 55 *Ib.*, 391.

The 7th and 8th grounds of the motion for a new trial are covered by the above ruling on the 6th, and were likewise properly overruled. So that the entire ruling of the court below, on the motion to quash the array first argued for plaintiff in error, is approved.

. 2. The second point refers to the overruling the motion to continue. These motions are always addressed to the discretion of the presiding judge, and much deference is paid to his judgment on questions of continuance. So far as the motion rests on the absence of the witness, it appears that he was in the state of Florida, and beyond the jurisdiction of our courts. 47 *Ga.*, 606; 60 *Ib.*, 257. The matter resting in the discretion of the court below, and no means being shown whereby the witness beyond seas could be got to court, and if brought, his testimony being only corroborative, it is difficult, from the cases just cited and many others which could be cited, to see any abuse of discretion in overruling the motion to continue on this ground; and counsel really did not press it.

The motion was then renewed on the ground of illness of Mr. Freeman, after the jury was stricken and some testimony in ; but the defendant swore that Mr. Cox, not Mr. Freeman, was leading counsel. Moreover, he did not swear that he could not go safely to trial without Mr. Freeman's services. Code, §3525.

It was then renewed again, after all the evidence was in, and two arguments had been made, on the ground of the continued sickness of Mr. Freeman. A good deal of evidence was put before the court to show that he was the leading counsel, but the judge adhered to the opinion imbibed from the first oath of the defendant, that Mr. Cox was the leader, especially to make the argument, the thing which then remained to be done. Having witnessed the entire transaction in respect to the effort to continue; having full knowledge of the respective standing, skill,

tact, ability and eloquence of the several counsel, we cannot say that, when the judge held that the man whom the defendant relied on as the leading counsel, was such in truth and fact, he thereby abused his discretion. In a case where there was but one counsel, and he much wearied and wasted with labor, so much so as not to have been able to prepare the case as he insisted, this court ·held that the presiding judge was better prepared to pass on the issue ·of continuance than this court, and left his discretion undisturbed. 54 *Ga.*, 660. And in *Cox vs. The State,* where the defendant himself had been shot in the mouth, and had not recovered from it, and his inability to communicate distinctly and without pain to counsel on the trial was pressed as ground for continuance, this court, on the same ground of reluctance to interfere where the judge below had the discretion, and so much superiority over this court, from eyesight and immediate supervision, refused to intervene, and put the refusal on this reasoning. 64 *Ga.*, 374.

The conclusion must be that this court cannot now say, on this case, so much stronger than those cited against the grant of the continuance, in view of all the shifts and turns and changes of scene under the eye of the court below, and of the three counsel besides Mr. Freeman, left to · defend the prisoner, and of our own knowledge of the experience and ability of two of the three, to say nothing of the growing promise of the younger, that the court below so abused his discretion as to require us to condemn its exercise and reverse its judgment as abuse of law.

3. The 12th ground is rested, not on the admissibility . of another indictment for murder against the defendant, in which the deceased was the prosecutor, but on the manner in which it was admitted and the confined view with which the jury was allowed to look at it, as involving expressions or intimations of opinion on the evidence. It appears that the court said, in ruling the indictment in as evidence, that "it is put in evidence for the fact that he

appeared as prosecutor, and for that evidence and that alone," and because, in charging the jury, the court repeated, " it is simply the isolated fact that he was prosecutor in that case, and in that case alone ; that is all that the jury can consider in reference to that testimony." It appears from the general · charge that the court confined them to the.consideration of that indictment, to illustrate motive or malice towards deceased, and laid down the law clearly thereon. There is no legal expression or intimation of opinion about it—none of. any sort, except to prevent the jury from using it, as they might have otherwise done, as evidence of the repeated homicides of the accused. Nothing was said to hurt, all to help, the prisoner. The jury were told that the presumption was the accused was innocent in that case, and they could only consider it to show motive.

4. The 13th ground of·the motion has nothing objectionable in it when the facts in testimony are considered. A witness may give his opinion of the character of a man as dangerous or otherwise, if he has known him long—ever since the war.

Surely it is for the jury to determine when ·a witness is successfully impeached; if so impeached in their opinion, he should not be believed; if corroborated, he may be believed, and the corroboration may be by circumstances or other witnesses.

Section 4234 of the.Code was inapplicable to the case.

These embrace the heterogeneous complaints embraced in the 13th ground, with a re-hash of that embodied in ·the 12th.

5. The 14th ground embodies another set of objections or complaints equally untenable. Where one knows the character of a witness·generally in the town where he once lived, he may testify as to that character for veracity, though the witness has moved some four or five miles in the country, and the evidence should go to the jury, to be considered and weighed for its worth by them.

A charge that, " inasmuch as murder embraces the lower

grades of homicide, the defendant can not only be convicted of murder under the indictment in this case, if the evidence should authorize it, but if not guilty of murder, may be guilty of voluntary manslaughter, if the evidence require it," is the law.   The word "require" was used merely to avoid tautology in repeating "authorize," and could not have hurt defendant, in all human probability, no matter where used in the charge ; but where the language occurs in the opening of the case to the jury, as is the case here, it is impossible to conjecture how it could be so construed as to hurt defendant.

Whether the verdict was contrary to the charge complained of in this ground, depends on whether it was contrary to law because the evidence was insufficient to convict in reference to rules of law about reasonable doubts, the effect and weight of positive and negative testimony, and of assault by the deceased, etc.   We do not see that it is not supported by the evidence on these points of law, ruled by the court and uncomplained of as law by the defendant.

6. The 15th ground is robbed of all sting by the judge's statement.

The prisoner's surety requested the judge to say to the sheriff, if the defendant was tried, that he desired to be relieved as soon as the trial commenced.   This message was delivered, and after the motion for continuance was overruled, at the dinner recess, and before any of the jury were empanelled, the defendant was taken in custody by the sheriff on his own motion.   This appears to us right, and does not show or certify anything like the complaint made by the defendant, that the court ordered him, while under bond, publicly in open court, into custody, and from that time until the end of the trial, he was kept under guards specially deputized for that purpose.   It is not pretended that he was so in custody as not to have freedom of intercourse and consultation with his counsel.

7. In respect to other grounds, that counsel for the state

indulged in vituperation and abuse of the defendant, and made statements of facts outside of the evidence, it is enough to say that the record shows that the counsel was not interrupted by the defendant's counsel while so animadverting on the conduct of their client; and that it had been agreed between the concluding counsel on each side not to interrupt each other.

It is well settled in this court that unless the attention of the court be called to such lines of discourse, failure to stop counsel is not good ground for a new trial.  65 *Ga.*, 525 ; 57 *Ib.*, 42 ; 46 *Ib.*, 26 ; 11 *Ib.*, 629.*

8. The last point is the partiality of certain of the jurors as alleged by defendant and undiscovered until after the trial.

On a careful examination of the affidavits pro. and con., it seems to us clear that the judge committed no error in overruling the motion, so far as it rests on this ground. There is really nothing arising to the position of deserving serious comment except in the case of Jackson.   A family by the name of Coleman, consisting of a man and wife and two daughters, swear to statements of his which, if true, would show bias and prejudice to such extent as to disqualify him; but bad feeling between the juror and this family is proved by the juror's own affidavit and that of his neighbors, and the motive to bring him into disrepute is alleged in his affidavit.   He denies the language and all bias or prejudice of any sort; his character as an upright and truthful citizen is sustained and vindicated by quite an array of witnesses; and his fellow-jurors also all come to his rescue, and the fact is brought out that the only disagreement was but trifling and brief and related to the penalty only in which he seems to have taken no more active part than the others.   It must be borne in mind that the rule is well settled that, if it be witness against witness, a new trial on this ground is never granted;

*Contrast Cleveland Paper Co. *vs* Banks (Nebraska, S. C., Oct. 9, 1883), Alb. L. J, Vol. 28, p. 363. (Rep.)

because oath balances oath. Here, it is true, there are four, but it is one family, on one occasion; nobody else present by whom to contradict them, and bad feeling existing. This, in connection with the sustaining depositions, makes such a case as does not *per se* disqualify the juror, and the depositions of his fellow-jurors turn the scales decidedly in favor of his own solemn and repeated oath of impartiality; and when to this is superadded the fact that he did not know personally, or very slightly if at all, either the accused or the deceased, it would appear that the trial was fair, so far as his impartiality was necessary to render it so. 5 *Ga.*, 139; 14 *Ib.*, 712; 15 *Ib.*, 544; 17 *Ib.*, 512; 11 *Ib.*, 616; 38 *Ib.*, 296; 43 *Ib.*, 238, 516; 45 *Ib.*, 279; 58 *Ib.*, 577; 61 *Ib.*, 182; 68 *Ib.*, 696.

In view of the whole case, we do not feel at liberty as a reviewing court to reverse the judgment and set aside the verdict.

The testimony furnishes abundant evidence to support the verdict; the presiding judge is satisfied with it; the charge is apposite, clear and full; and though the penalty be capital punishment, it is inflicted under the law by a jury of the vicinage, upon facts fully investigated, and from which the truth of the case was elicited by them.

Disregard of human life is too common everywhere; the use of the deadly weapon, too frequent; and while no man should suffer, if innocent; if guilty, none should escape.

Judgment affirmed.