STEWART v. PROFIT et al.†

(Court of Civil Appeals of Texas. Galveston. March 9, 1912. On Motion for Rehearing, March 28, 1912. Motion for Rehearing Denied April 18, 1912.)

1. JUDGMENT (§ 751*)—RES JUDICATA—CRIMINAL PROSECUTION.

In an action involving the question of whether a grantor was a white woman or a negress, the indictment and proceedings in a criminal case in which she was convicted as a white woman on the charge of marrying a negro were incompetent.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1309, 1310; Dec. Dig. § 751.*]

2. JUDGMENT (§ 957*)—COLLATERAL ATTACK—WHAT CONSTITUTES.

Where the record of an action involving the title to land had been received in evidence, parol testimony that a party to such former action, who had been awarded by that judgment a portion of the land, had no title thereto but that the judgment was entered by agreement of the parties, and constituted a gift to such party from the adverse party, did not impeach the record, and hence was improperly excluded on that ground.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1826; Dec. Dig. § 957.*]

3. EVIDENCE (§ 322*)—REPUTATION—ADMISSIBILITY.

The fact that a grantor of land was a white woman, instead of a negress, may be proved by general reputation, when in issue.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1203–1213; Dec. Dig. § 322.*]

4. WITNESSES (§ 37*)—GENERAL REPUTATION—KNOWLEDGE OF WITNESS.

Witnesses testifying as to general reputation must show that they have knowledge of the facts, and generally that their opportunity to acquire such knowledge was sufficient to enable them to do so.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80–87; Dec. Dig. § 37.*]

5. WITNESSES (§ 37*)—GENERAL REPUTATION—KNOWLEDGE OF WITNESS.

A witness, who testified that he lived at D., a country neighborhood about four or five miles from L.; that he had been in L. a good deal during the last 20 years, and went a good deal among the people and knew most of them, both negroes and white people; that the people at D. and those at L. met frequently and discussed affairs; and that the people in both places were engaged in the same class of business—might testify that by general reputation a woman living in L. was a white woman, and not a negress.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80–87; Dec. Dig. § 37.*]

6. WITNESSES (§ 37*)—GENERAL REPUTATION—KNOWLEDGE OF WITNESS.

A witness, who testifies that he had a dirt pit and was engaged in the business of loading dirt in the country neighborhood where B. lived; that the husband of B. as well as a great many of the residents of that place, who were mostly negroes, worked for him; that he heard the question of B. being a white woman frequently discussed by such residents; and that he owned a place about seven miles away where he would go each night, returning to his place of business in the morning—is qualified to testify that by general reputation B. was a white woman.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80–87; Dec. Dig. § 37.*]

7. HUSBAND AND WIFE (§ 65*)—CONVEYANCE BY WIFE—NECESSITY OF HUSBAND JOINING.

If a husband abandons his wife and ceases to support her, no matter what his motive may be, and although he continues to live in the same neighborhood, she may convey land subsequently acquired without his joining in the deed.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 287, 288; Dec. Dig. § 65.*]

On Motion for Rehearing.

8. HUSBAND AND WIFE (§ 74*)—CONVEYANCE BY MARRIED WOMAN — AVOIDANCE — EVIDENCE—WEIGHT AND SUFFICIENCY.

In an action involving the validity of a conveyance by a woman who had contracted a pretended marriage with a negro, evidence *held* to show conclusively that she was generally regarded in the community as a white woman, that to all outward appearances she was living separate and apart from her pretended husband and supporting herself, and that the pretended husband told the purchaser that she was a white woman, and for that reason could not be his wife, and that he had no interest in the property, and hence that the husband was estopped from claiming an interest in the land on the ground that she was his wife, and that her deed, in which he did not join, was a nullity.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 309–312; Dec. Dig. § 74.*]

9. HUSBAND AND WIFE (§ 74*)—CONVEYANCE BY MARRIED WOMAN—AVOIDANCE—ESTOPPEL.

Where a woman has conveyed land by a deed, in which her husband did not join, but which he is estopped to attack, their children are also estopped from attacking the deed.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 309–312; Dec. Dig. § 74.*]

Error from District Court, Galveston County; Robert G. Street, Judge.

Trespass to try title by Maco Stewart against Louise Profit and others. From a judgment for plaintiff as to a part only of the land involved, he brings error. Reversed and rendered on rehearing.

Stewarts, of Galveston, Geo. T. Burgess, of Dallas, and John E. Quaid, of Galveston, for plaintiff in error. George G. Clough, Aubrey Fuller, Marsene Johnson, and John C. Walker, all of Galveston, for defendants in error.

REESE, J. Maco Stewart instituted this action in trespass to try title to recover the south five acres, and an undivided one-seventh interest in the north five acres, of a certain tract of ten acres of land in the town, or rather country settlement, of La Marque in Galveston county. The defendants are Calvin Bell, the surviving husband of Katie Bell, deceased, and their seven children. A trial with a jury resulted in a verdict and judgment for defendants for the south five acres, and in favor of plaintiff for the undivided one-seventh of the north five acres. From the judgment the plaintiff, Stewart, prosecutes this appeal.

The property in controversy is part of a tract of 50 acres formerly belonging to one Donovan, who sold and conveyed to T. L.

Kennedy. Kennedy brought suit against Katie Bell for the 50 acres; she being in possession. Katie Bell set up a limitation title, and on June 29, 1908, there was a judgment in her favor for the said 10 acres. Katie Bell had made a contract with one Kelsey, by the terms of which he was to pay the expenses of the litigation, employ and pay a lawyer, etc., in consideration of which she was to convey to him one-half of the land recovered by her. She recovered judgment for a tract of 10 acres. After the judgment was rendered, Katie Bell conveyed to said Kelsey the south 5 acres referred to, which was by him afterwards conveyed to appellant, Stewart. Katie Bell having died leaving seven children, one of them, William Bell, conveyed to Stewart all of his right, title, and interest in and to the 10 acres. This constitutes Stewart's title.

The aforesaid judgment in Kennedy v. Bell is the common source of title. The basis of appellees' claim is that Katie Bell was the wife of Calvin Bell and that the deed to Kelsey, executed by Katie Bell alone, was void and conveyed no title. Stewart's title to the undivided one-seventh interest claimed by him is not contested. The contention of the appellant, Stewart, is: First, that Katie Bell was a white woman and incapable, in law, of contracting a marriage with Calvin Bell, who is admittedly a negro; second, that if the marriage was legal, Calvin Bell had abandoned Katie Bell, and that her contract with Kelsey, and the deed executed by her in pursuance thereof, was such a contract and conveyance as she had a right to make, and was binding and sufficient to convey the land, notwithstanding they were made by Katie Bell alone; and, third, that by the acts of Katie Bell, and also of Calvin Bell, they, especially Calvin Bell, are estopped to deny the validity of the deed to Kelsey. The court submitted the case to the jury in a charge which presented alone the issue as to whether Katie Bell was a white woman, instructing them to find for appellant if they found she was a white woman, and for appellees (as to the five acres) if they found the contrary. The fight was mainly waged over this issue, though the other issues are presented by the assignments of error.

Calvin and Katie Bell moved to La Marque about 1879 and settled upon the Donovan tract under an agreement with Donovan to keep the place up and pay the taxes for the use of it. They at that time lived together in the same house. In 1893 Katie Bell was convicted and sentenced to the penitentiary and served a term of two years. The indictment and proceedings in this case were excluded by the court, on objection of appellees; but we gather from testimony admitted that the charge upon which she was convicted was marrying with Calvin Bell, she being a white woman and he being a person of negro blood. After Katie came back, Calvin continued to live in the house for a few months, when "through fear," as stated by the witnesses, he left this house and took up his abode in another part of the settlement a few hundred yards away, since which time, up to the death of Katie, which occurred in ———, he never at any time lived under the same roof with Katie. It is contended by appellant that there was complete abandonment of the marital relations, while appellees contend that these relations were to some extent kept up and that Calvin contributed, to a small extent it is true, even by appellees' testimony, to the support of Katie. Evidence was also introduced on the part of appellant to support his claim of estoppel, based not only on the appearance of abandonment, but on positive statements of both Calvin and Katie that the latter was a white woman, and on the part of Calvin, in substance, that he had nothing to do with the property, and that Katie was at liberty to do as she pleased in the matter of the contract with and conveyance to Kelsey. Instructions on these issues requested by appellant were refused; the court, as we have said, submitting the issue as to whether Katie Bell was a white woman as the sole issue.

[1] We think the trial court did not err in excluding, upon appellees' objection, the indictment and proceedings showing the conviction of Katie Bell in 1893, on the charge of marriage with Calvin Bell, a negro, she being a white woman, as set out in the sixth assignment of error.

[2] Appellant, in connection with the judgment in the case of Kennedy v. Bell, offered testimony to show that Katie Bell in fact had no defense to offer to the suit, and that this fact was recognized by her attorneys, but that her attorneys appealed to attorney for Kennedy to let her have the 10 acres, here in controversy, on the ground that she was an old woman 70 years old struggling for an existence, trying to get along by raising garden truck on this land, with no other means of subsistence, and that out of consideration for her needy situation, and not in recognition of her claim to any part of the land, her counsel admitting that she had none, plaintiff's attorney, for his client, the attorney also having an interest in the land, agreed that plaintiff would give her the 10 acres, and that to carry out this agreement the judgment was entered up without evidence offered. To this testimony appellees objected on the ground that the judgment was conclusive and could not be attacked collaterally, which was sustained and appellant excepted. Calvin Bell was not a party to this suit. The evidence, if true, showed that the land was in fact a donation or gift to Katie Bell, and therefore her separate estate, even if she was legally the wife of Calvin Bell. It did not impeach the conclusiveness of the judgment, nor was it, in

any proper sense, an attack upon it. Looking to the substance instead of the form, it was, if these facts be true, as much a gift to Katie Bell as though judgment had been rendered in favor of Kennedy and he had afterwards made her deed without consideration other than regard for her needy circumstances. The evidence was improperly excluded, and the seventh assignment presenting the point must be sustained.

There was no error in excluding the testimony of Dr. Edward Randall as to the general reputation in the community at La Marque that Katie Bell was a white woman. The witness did not show himself sufficiently acquainted with such general reputation to qualify him to testify.

Appellant also offered to prove by witnesses Luttrell and Settle that Katie Bell was according to general reputation in and about La Marque, where she lived, a white woman. This testimony was objected to by appellees on the ground that the witnesses were not residents of the community, and the objection was sustained, to which appellant excepted.

[3] General reputation as to this fact was admissible. 2 Wigmore, Ev., § 1605; Locklayer v. Locklayer, 139 Ala. 354, 35 South. 1008; Bryan v. Walton, 20 Ga. 480; Nave's Adm'r v. Williams, 22 Ind. 368; Chancellor v. Milly, 9 Dana (Ky.) 24.

[4] The persons testifying to such general repute must show that they have knowledge of the facts, and generally that their opportunity to acquire such knowledge was sufficient to enable them to do so. It is said by Prof. Wigmore that such knowledge can be adequately gained only by a residence in the place, not by a mere visit of inquiry, or by a conversation with a resident who reports the reputation, but that there is no fixed rule as to how near to place of domicile the witness must have lived. 1 Wigmore, Ev. § 692.

[5] Luttrell testified, in substance, that he had for six or seven months each year for the last five or six years resided about 4½ miles from where Katie Bell lived. He is a surveyor and also engaged in stock raising, that he has been to La Marque a good deal during the last 20 years, that he went a good deal among the people, and knows most of them, negroes and whites, at La Marque, and that the people at Dickinson, where he lives, and at La Marque frequently meet each other and discuss affairs with one another. The people at Dickinson, where witness lived, and La Marque were engaged in farming and stock raising. They are both country neighborhoods, rather than towns, four or five miles apart.

[6] The witness Settle had lived in Galveston for 15 or 20 years. Had a dirt pit at La Marque, where he was engaged in the business of loading dirt, and that Calvin Bell and a great many of the residents of La Marque, most of whom were negroes, worked for him. Heard the question of Katie Bell being a white woman frequently discussed by these residents of La Marque. Witness' father owned a place at La Marque. Witness owned a place at Arcadia, seven miles away, and he would go to Arcadia at night and back to La Marque in the morning.

The testimony of both of these witnesses shows that they had about as good opportunity to learn the general reputation of Katie Bell, in respect to being a white person, as though they lived at La Marque. We think their testimony as to such general reputation should have been admitted. Hadjo v. Gooden, 13 Ala. 718; Dupree v. State, 33 Ala. 388; State v. McLaughlin, 149 Mo. 19, 50 S. W. 315; Wallis v. White, 58 Wis. 26, 15 N. W. 767; Turner v. State, 70 Ga. 765. The eleventh and thirteenth assignments of error must be sustained.

[7] Appellant requested several charges presenting the issue of estoppel arising from the facts that Calvin, by his act in living apart from Katie Bell, had produced the impression that he had abandoned her and she had a right to make the deed to Kelsey without joinder by the said Calvin, as if she were a feme sole, and that Kelsey in his dealings with Katie Bell was influenced thereby. We think the evidence presented this issue, and it should have been submitted to the jury. There was evidence which tended to show that Calvin and Katie Bell had not lived together for many years, that she had to support herself without any assistance from him, that when sued for the land she was without means to defend the suit, and that the contract she made with Kelsey really resulted in her securing the title to her home and five acres of land to which she had not a shadow of right, and which she could not have secured without Kelsey's assistance. We think there can be no doubt that if Calvin had in fact abandoned his wife to shift for herself, although he continued to live in the neighborhood, and no matter from what motive he had ceased to live with and provide for her, she would have had the right to make this deed to Kelsey in pursuance of her contract without the joinder of her husband. Carothers v. McNese, 43 Tex. 221; Fullerton v. Doyle, 18 Tex. 4; Heidenheimer v. Thomas, 63 Tex. 290.

What Calvin Bell said to Kelsey, according to his own version of the conversation, tended to show that he took this view of it. It is true that other witnesses, the defendants in this suit, all interested witnesses, testified that Calvin, while not living openly with Katie, under the influence of fear, presumably on account of her being a white woman, or being supposed to be a white woman, in fact did visit her occasionally and contributed, in a very desultory and meager way, towards her support. Still the evidence raised the issue of an apparent

abandonment which was reasonably calculated to create the impression that there had been such abandonment as to authorize Katie Bell to make the deed, that Calvin Bell was responsible for such apparent, if not real, condition, and Kelsey was misled and deceived thereby, if there was not a real abandonment, and acting under this impression had paid out his money and received the deed.

The evidence raised the further issue of estoppel, arising from the positive statement of Calvin Bell to Kelsey, as testified to by Kelsey, and not denied by Calvin, that Katie Bell was a white woman, and that he had nothing to do with any trade she and Kelsey might make.

All of these issues were raised by the evidence, to wit: Such abandonment of Katie Bell by Calvin Bell as authorized her to make the deed; estoppel against Calvin Bell arising out of the apparent abandonment, for which appearance of things he was responsible and by which Kelsey was deceived and by which he was induced to act in the matter; and also estoppel against Calvin Bell arising upon what he actually said to Kelsey, when he told him of the proposed contract with Katie.

It was error, and not fair to appellant, in this state of the record, to submit the case to the jury upon the sole issue as to whether Katie Bell was a white woman and to make appellant's right to recover depend entirely upon this fact.

We cannot agree with appellant that the undisputed evidence established his right to recover upon any of these issues. We think they were all issues to be determined by the jury. Most of appellant's assignments of error are based upon the refusal of the court to charge the jury to return a verdict for plaintiff upon one or other of these issues, and they must be overruled.

Other assignments of error are overruled without discussion with the propositions thereunder. The fourteenth assignment is not copied in the brief and cannot be considered.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

[8] Upon further examination and consideration of the evidence, upon appellant's motion for rehearing, we have concluded that upon the undisputed evidence upon the issue of estoppel the jury should have been instructed to return a verdict for appellant, Stewart, and judgment should have been rendered for him. The undisputed evidence establishes the following facts: After 1895, when Katie Bell came back from the penitentiary, she and Calvin never lived together as man and wife, except possibly for a few months immediately following her return. Katie Bell continued to live in the house on the Donovan place with her children, but Calvin moved to another place several hundred yards away in the town of La Marque. He was moved to this "through fear," as stated by the witnesses, from which it is to be inferred that he was afraid of being in some way molested on account of Katie being, or being considered, a white woman. Calvin testified, as did some of the children, that he visited her occasionally, but it is clear that to all outward appearances they were living entirely separate and that Katie Bell was supporting herself. By a great many persons Katie Bell was taken to be a white woman. This was the condition of affairs when the Kennedy suit was brought against her alone for the 50 acres. When that suit was brought, she applied to Kelsey for assistance, and agreed to give him one-half of whatever land might be saved for her, in consideration of which Kelsey agreed to employ and pay a lawyer for her, and otherwise assist her in the defense of the suit. About the time Kelsey purchased the property, and before he got the deed, he had a conversation with Calvin Bell about it. With regard to this Kelsey testifies as follows: "He told Calvin Bell he was going to get a deed to the property. Calvin Bell stated the property did not belong to either Calvin Bell or Katie Bell. Katie Bell had no more right to it than did he (Calvin Bell). That the property belonged to Jim Donovan. Witness told Calvin that Katie was going to get ten acres. Calvin stated that he had nothing to do with it; if she got a thousand acres, he had nothing to do with it. Witness in taking the deed from Katie Bell consulted and relied on the opinion of I. Lovenberg, Jr., her attorney. In taking the deed from Katie Bell he believed that Calvin told him the truth when he told him that Katie Bell was a white woman. Witness relied upon it as a true statement that Katie Bell was a white woman." This witness also testified: "Katie Bell did not live with Calvin Bell during the time witness knew her. There was a general reputation throughout La Marque that Katie Bell was a white woman. Calvin Bell is a negro. Before witness bought the property, he also had a conversation with Calvin Bell. Calvin Bell told witness that Katie Bell was white and that was the reason he was not with her."

When interrogated about this talk with Kelsey, as a witness for appellees, Calvin testified: "Well, he spoke to me this way about that property. He says, 'Well, I am about to get into that piece of ground of Kitty's over there.' I says, 'Yes.' And he says, 'Well, it is a big lawsuit, and I am going to defend the case for her and she tells me that she will allow me one-half.' I says: 'All right. I have nothing to do with that.' I says: 'She never said nothing to me about what her trades were or anything of the kind. I have nothing to do with it. Anything that they want to contract without my voice or

signature to it, I have no right to lay hold of.'" He added: "At that time I did not know what my rights were in the premises. Ambrose (Kelsey) did not ask me to sign any deed. I never saw any deed." Witness did not deny that he told Kelsey that Katie Bell was a white woman. This witness testified, it is true, that he continued to live with Katie Bell, but according to his own testimony his visits were only occasional and not open, and there is nothing in his testimony to rebut the inference that so far as public appearances went, at least, they were living entirely separate.

These facts, which were undisputed, were calculated to induce the belief on the part of Kelsey that Katie Bell was a white woman and therefore could not be the wife of Calvin Bell, or at least that they had separated, and Calvin had left Katie to shift for herself, and did not claim any interest in the land in controversy, or any right to control her in the disposition of it. Acting under this belief, Kelsey interested himself, employed and paid a lawyer to defend the suit, through which means alone the ten acres were saved to Katie Bell. Calvin stated that neither he nor Katie had any interest in the land; that it belonged to Donovan. It is entirely clear that without the assistance of Kelsey, which he was induced to give by the promise of half of what might be recovered, and which contract he was induced to make by Calvin's conduct and representations, together with those of Katie Bell, there would be no land to fight over. All would have gone to Kennedy. "He who does not speak when he should, will not be allowed to speak when he would," if the result of such later speech be to allow the perpetration of a fraud upon another.

[9] Having by his positive statements to Kelsey induced him to go ahead with the business, Calvin cannot now be allowed to set up rights which he disclaimed then. The other appellees are bound likewise by the estoppel, which rests upon both Calvin and Katie Bell.

The motion of appellant for a new trial is granted. The former judgment, in so far as it remands the case for another trial, is set aside, and judgment is here rendered for appellant for the land sued for.